Green,p Judge,
delivered the opinion of the court:
This is a suit to recover for dredging which plaintiff contracted to do for defendant. Plaintiff completed the contract and in so doing dredged 89,744 cubic yards of material which, at the contract price of 32 cents a cubic yard, amounted to $28,718.08. A payment of $23,115.17 was made thereon, but when plaintiff presented a final bill for the balance of $5,602.91, defendant deducted $4,346.88 for over-dredging and tendered $1,256.03 in payment of the balance. This tender was refused, and plaintiff now brings this suit to recover the full amount of the balance, $5,602.91.
The issue in the case is whether the defendant had the right, under the provisions of the contract as applied to the facts in the case, to make the deduction for overdredging.
The dredging to be done under the contract was in slips between certain piers at the Army Supply Base, Brooklyn, N.Y. The material to be removed was mainly silt, or fine mud, which would flow in somewhat the same way that water seeks its own level, except at a lower rate. Consequently when any excavation was made the contractor had to take into consideration the flow of the adjoining silt. The excavation was to be carried to a depth of thirty feet, but material removed for a depth of not more than two feet lower was to be paid for -at the full contract price; otherwise, there were to be no payments for material excavated outside or below the limits provided in the contract, but where material was removed which had slid from adjacent areas into the dredged area this was to be paid for.
There is much discussion in argument of the facts connected with the dredging, particularly its location, its surroundings under water, the nature of the material to be dredged, etc., but we do not think it is necessary to set out *349 here the evidence in this respect. Counsel for defendant contend that by the terms of the contract the contracting officer was authorized to determine whether in fact there had been any overdredging and, if so, the amount thereof; but this construction of the contract is disputed by plaintiff. For the determination of the question thus raised, it will be necessary to consider more particularly the provisions of the contract.
In addition to the specifications of the contract which are set out in substance above, the last paragraph of section 27 thereof provided:
“Whether or not contract depth is being made will be determined by soundings or sweepings, taken behind the dredge as the work progresses, and the contractor will be advised of the result. Should this survey disclose any excess of overdepth or side-slope dredging, the amount of such excess^ will be deducted from the monthly estimate.”
Article 15 of the contract provided:
“Disputes. — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within thirty days to the head of the Department concerned, whose decision shall be final and conclusive upon the parties thereto as to such questions of fact. In the meantime the contractor shall diligently proceed with the work as directed.”
If these provisions are controlling, it is obvious that plaintiff has no case except for the amount of the payment tendered and refused, the tender having been made in accordance with the decision of the contracting officer.
It is contended on behalf of the plaintiff that the fact that at the end of article 15 there is a provision that “in the meantime the contractor shall diligently proceed with the work ”, shows that the decision of the contracting officer was not intended to apply in the manner claimed by defendant; and in support of this contention attention is called to the fact that the custom is to make a final survey of the amount of material dredged, which defendant did not make, but on *350 the contrary made a survey almost immediately after the dredging had been done without waiting for a settlement of the material. We do not think the construction contended for by plaintiff is correct. The paragraph quoted from section 2J clearly provides that the quantity dredged shall be determined by soundings taken behind the dredge as the work progressed. We think also that the evident intention of the language of article 15 was to give the contracting officer full authority to settle all disputes of fact and that his decision would be final unless an appeal was taken in the manner provided, and no appeal was taken. As some argument is made as to the proper construction of the specifications, it should be said that this matter is also covered in other provisions thereof wherein it was recited that if the “specifications are not understood, or shall appear to be ambiguous, or in conflict, then the true intent and meaning thereof shall be left to the decision of the contracting officer, whose decision shall be final.” We conclude, therefore, that the plaintiff was bound by the decision of the contracting officer, if he was acting in good faith and without negligence.
There is nothing in the evidence from which it maj be inferred that the decision of the contracting officer was not made in good faith, or that there was any such negligence in considering the matter as would be equivalent to bad faith. On the contrary, so far as the evidence shows, the contracting officer examined into the matter and concluded that the calculation of the Government engineer that 21,139 cubic yards should be deducted for overdredging was far too large, and accordingly the contracting officer deducted only 13,584 cubic yards.
Judgment will be rendered in favor of the plaintiff for $1,256.03, which defendant admits to be due; but as defendant has at all times been ready and willing to pay this amount, judgment will be rendered against the plaintiff for the cost of printing the record.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.